UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

Not Present   Not Present

**Proceedings:**   **[IN CHAMBERS]** Order Regarding Motion to Remand and Motion to Dismiss

Plaintiffs Theresa Tailford, Sanford Buckles, and Jeffrey Ruderman ("Plaintiffs") move to remand this action to State court. Mot., ECF No. 12. Defendant Experian Information Solutions, Inc. opposes the motion ("Experian"). Opp'n., ECF No. 18. Plaintiffs replied. Reply, ECF No., 20.

Experian also moves to dismiss the complaint. MTD, ECF No., 11. Plaintiffs oppose the motion. MTD Opp'n., ECF No., 17. Experian replied. MTD Reply, ECF No. 19.

For the following reasons, the Court **DENIES** the Motion to Remand, and **GRANTS** the Motion to Dismiss.

## I. BACKGROUND

Plaintiffs filed their class action complaint in the Superior Court of the State of California, County of Orange (Case No.: 30-2019-01102976-CU-MC-CXC), alleging that Experian, a Credit Reporting Agency ("CRA"), violated the Fair Credit Reporting Act ("FCRA"). Compl., ECF No. 1-1. Experian removed the action to Federal Court on November 12, 2019. Removal, ECF No. 1. The Complaint asserts the following three claims:

Count One, brought by Plaintiffs and Classes 1, 2, and 4:

(1) Violation of 15 U.S.C. §§ 1681g(a)(1), 1681g(a)(3) and/or (a)(5) by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

    failing to include a list of all "soft" credit pulls on consumer disclosures for the 1-year period preceding the date of the request.

    (2) Violation of 15 U.S.C. §§ 1681g(a)(3) by failing to include the name of all persons who had procured a consumer report (or end-users of that report as defined under § 1681e(e)(1)) for the one-year period preceding the date of the request.

    (3) Violation of 15 U.S.C. §§ 1681g(a)(1) by failing to include all of the credit data it had stored related to consumers.

Count Two, brought by Tailford, and Class 3:

    Violation of 15 U.S.C. §§ 1681g(a)(5) by failing to include a record of all inquiries received by it in the 1-year period that identified the consumer in connection with a credit or insurance transaction not initiated by the consumer.

Count Three, brought by Tailford, Ruderman and Class 5:

    (1) Violation of 15 U.S.C. §§ 1681g(a)15) by failing to include the "employment dates" it had stored related to consumers.

See id. ¶¶ 116-134.

    Experian collects "traditional" consumer credit data such as inquiries, public records, employers, and dates of reported employment in its "File One" database for purposes of determining a consumer's creditworthiness. Id. at ¶ 27. Experian's responses to credit inquiries are "at least in part" derived from this database. Id. Experian also provides consumer employment dates on another product called "Employment Insight" that Plaintiffs allege is a "consumer report." Id. at ¶ 28. Plaintiffs contend that employment dates are of interest to prospective employers and that "Experian's credit-scoring models have also listed the length of an applicant's job as an 'Adverse Action Reason,' demonstrating that it can affect consumer creditworthiness." Id. at ¶ 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                                      Date   5/12/20

Title   Theresa Tailford et al v. Experian Information Solutions, Inc.

### A.   The Behavioral Data

Experian also collects "non-traditional" consumer data such as household income and purchase history (the "Behavioral Data"). Id. at ¶ 30. The Behavioral Data is sold to affiliates and third parties through a credit product called "OmniView" which includes a database called "ConsumerView." Id. at ¶ 31. ConsumerView includes "thousands of attributes on more than 300 million consumers and 126 million households." Id. Such information is Personally Identifiable Information because it either relates to individual consumers, or is derived from Personally Identifiable Information "which was stripped away prior to sale," or can be combined with other "easily obtainable data to construct a comprehensive view of individual consumers." Id. The ConsumerView database was formerly known as the "InSource Database" and Experian in a past public filing described it as "consumer socio-demographics, lifestyles, culture and behavior" data which it analyzes and categorizes into a compilation of datasets. Id. at ¶¶ 32-33.

ConsumerView also includes Experian's "Premier Aggregated Summarized Credit Statistics" which is a "series of aggregated credit attributes and proprietary scores that represent "the entire U.S. credit population." Id. at 39. The product brochure from the Premier Aggregated Summarized Credit Statistics indicates that it is derived from "Experian's National Consumer Credit File" and identifies its data source as the File One database. Id. at ¶ 40-42. It also states that the product "incorporates credit reporting agency data elements" such as available credit, collection activity, credit capacity, etc. Id. at ¶ 42. Plaintiffs contend that Experian offers the ConsumerView information "for the purpose of serving as a factor in determining eligibility for credit" because one offering of the product states that "summarized credit statistics are 'calculated by aggregating the available consumer credit data in each Zip+4 and are most useful to identify prospects for invitations to apply for credit . . . offers." Id. at ¶ 44. The data can be applied to "[t]arget candidates for invitations to apply for credit." Id.

Plaintiffs allegations as to the Behavioral Data contained in the ConsumerView product are best summarized in paragraph 45 of the Complaint:

> Although ConsumerView is purportedly a marketing database, the foregoing allegations make clear that the information contained therein is derived, at least in part, from Experian's File One database, and that this information is used for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

> purposes related to determining consumers' eligibility for credit, employment, insurance, or other purposes articulated under Section 1681b of the FCRA. The non-traditional consumer information collected by Experian – including but not limited to education, income, and the type of residence a consumer lives in – has been used as a factor in determining consumer creditworthiness, in addition to its use as a marketing tool.

Id. at ¶ 45.

Experian also sells the consumer Behavioral Data through a suite of services called "Collection Advantage." Id. at ¶ 36. Collection Advantage "permit[s] the user to combine data from Experian's File One database and the database known as "MetroNet." Id. MetroNet contains demographic information from "INSOURCE" the "nation's largest repository of consumer marketing demographic data." Id.

### B. Data Breach

On October 6, 2017, UpGuard, a cyber-security research firm, discovered an Amazon cloud storage space that allegedly contained information regarding 123 million American households. Id. at ¶¶ 56-57. This data, allegedly placed in cloud storage by data analytics company Alteryx, was stored so as to be accessible to over one million specified users. Id. The information did not include the names of individual consumers; however, it included 248 columns of specific data points, among them address, phone number, number of adults and children living in the dwelling unit, length of residence, and other, more detailed consumer purchasing data. Id. The data could be cross-referenced with voter registration data and associated with specific individuals. Id. at ¶ 57. The information was provided to Alteryx by Experian through its "ConsumerView" product. Id. at ¶ 37-39, 57.

The existence of this information was made public by UpGuard on December 19, 2017, and news stories regarding the information were published later that day. Id. Through these news stories, Plaintiffs became aware for the first time that Alteryx allegedly procured their information directly or indirectly from Experian, or that Experian was collecting, storing and selling behavioral information. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

### C.   The Individual Plaintiffs

Tailford procured a disclosure of her own information from Experian pursuant to Section 1681g of the FCRA on October 10, 2017, which allegedly did not include behavioral information, employment data, including the dates of her employment, or inquiry information indicating that Alteryx had procured her data from Experian.  Id. at ¶ 62.  Tailford's Administrative or "Admin" Report[1], an internal Experian document produced in discovery, listed third party inquiries from Charter Communication on February 17, 2017; Loanme Inc. on October 5, 2017; and Cap One NA on September 16, 2017.  Id. at ¶ 63.  Further, other third-party inquiries listed in the Admin Report included numerous dates of inquiry that did not appear on her October 10, 2017 disclosure.  Id.

Buckles procured a §1681g disclosure from Experian on April 5, 2018, which allegedly did not include behavioral information or inquiry information indicating that Alteryx had procured his data from Experian.  Id. at ¶ 65.  Buckles's Admin Report listed, among others, inquiries from Synchrony Bank on August 31, 2017, and other dates of inquiry from other third parties that did not appear on his April 5, 2018 disclosure.  Id. at ¶ 66.

Ruderman procured a §1681g disclosure from Experian on May 14, 2018, which allegedly did not include behavioral information or inquiry information indicating that Alteryx had procured his data from Experian.  Id. at ¶ 67.

Plaintiffs seek to represent five different classes.  Id. at ¶¶ 84-115.

### II.  LEGAL STANDARD

### A.   Remand

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court if the parties may have originally filed the case in federal court. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163, (1997).

---

[1] An Admin Report is a distinct report run by Experian internally in File One to generate historical information.  See Compl., n. 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                          Date   5/12/20

Title   Theresa Tailford et al v. Experian Information Solutions, Inc.

The Ninth Circuit has directed courts to "strictly construe the removal statute against removal jurisdiction," so that any doubt as to the right of removal is resolved in favor of remanding the case to state court." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). This "'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (quoting Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### III. DISCUSSION

### A.   Remand

Plaintiffs argue that notice of removal was insufficient to establish jurisdiction because Experian did not definitively prove that Plaintiffs have Article III standing. Mot., 2-3. Experian argues that it properly removed this action because the Court has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

federal question jurisdiction given that the case alleges claims under the FCRA. Opp'n., 1.

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987).

There is no question that Plaintiffs' complaint raised issued under the FCRA, a federal law. Thus, removal was proper. Contrary to Plaintiffs' assertions, defendants seeking removal on the basis of federal question jurisdiction are not required to establish a plaintiff's Article III standing. Plaintiffs have not provided any controlling precedent to the contrary. Although it is true that cases must be remanded "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. § 1447(c)), an affirmative requirement to prove subject matter jurisdiction is not initially required for a defendant to remove an action.

Accordingly, Plaintiffs' motion to remand is **DENIED**.

### B. Motion to Dismiss

#### 1. The Behavioral Data Claims

Experian argues that the CRFA does not require that Experian disclose the Behavioral Data under Section 1681g because it "does not bear on a consumer's eligibility for credit, employment, or insurance, [and] its transmission does not constitute a consumer report." Mot., 8. Plaintiffs argue that information does not need to "independently be a consumer report in and of itself, but must appear on a consumer report" and that if it is, it is subject to the disclosure requirements of Section 1681g. See Opp'n., 3-4, 20-21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-02191JVS(KESx)     Date   5/12/20

Title    Theresa Tailford et al v. Experian Information Solutions, Inc.

    Under Section 1681g, consumer reporting agencies are required to clearly and accurately provide consumers with all "information in the consumer's file" upon their request subject to certain exceptions. Fundamentally then, the question the Court must answer is whether Plaintiffs theory of liability plausibly states a claim under Section 1681g given that it is an attenuated theory that the ConsumerView product contains information derived in part from the File One database which itself contains information that "might" be used in a credit report and therefore is subject to disclosure requirements. This requires answering another question – is the ConsumerView data information in a consumer's file?

    "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C.A. § 1681a(g). However, the Ninth Circuit in Shaw v. Experian Info. Sols., Inc., clarified that a "consumer's file includes 'all information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer.'" 891 F.3d 749, 759 (9th Cir. 2018) (citing Cortez v. Trans Union, LLC, 617 F.3d 688, 711-12 (3d Cir. 2010) (quoting Gillespie v. Trans Union Corp., 482 F.3d 907, 909 (7th Cir. 2007)). "A consumer, or credit, report is a CRA-prepared report that a CRA issues to third parties for certain qualifying purposes." Id. at 755, n.3. The FCRA clarifies that:

> [t]he term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
>     (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
>     (B) employment purposes; or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                                    Date   5/12/20

Title   Theresa Tailford et al v. Experian Information Solutions, Inc.

>    (C) any other purpose authorized under section 1681b of
>    this title.

15 U.S.C.A. § 1681a(d)(1).

Plaintiffs focus on to the word "might" in Shaw to argue that they only need to allege that the "information stored in File One, ConsumerView, or other databases that *might* be contained on a consumer report is subject to Section 1681g(a)(1)'s disclosure requirement." Opp'n., 17-19.

However, this Court agrees with the interpretation of the Steinmetz v. Am. Honda Fin. Court that noted that Shaw's definition of a consumer file "does not open the door for every shred of information to be included in a consumer disclosure simply because there is some slight chance it might someday be in a consumer report." 2019 WL 4415090, at *7 (D. Nev. Sept. 16, 2019) (appeal pending); see also Gillespie, 482 F.3d at 909-910 (explaining that the word "file" has a narrow meaning – "information included in a consumer report"). To find in the alternative would essentially mean that any and all information ever retained by a CRA even if it is not data that would appear in a credit report could be considered "consumer report" data. Plaintiffs alleging that information "might be furnished" must do more than make conclusory or speculative statements. They must show that defendants included similar information in a consumer report in the past or plan to do so in the future. See Gillespie, 482 F.3d at 909. No such, allegations exist here as to the Behavioral Data.[2]

Plaintiffs have provided no binding precedent for their apparent position that Behavioral Data constitutes information that might be in a consumer report. In Shaw the Court rejected an assertion that Experian was required to disclose upon a consumer request that Fannie Mae had mishandled its data because it was "not information retained by Experian in any credit report [and therefore,] falls outside the bounds of a 'file' for purposes of § 1681g(a)." 891 F.3d at 760. Similarly here, Behavioral Data is not alleged

---

[2]The Court notes that Experian misrepresents the extent of Steinmetz's holding as to behavioral data. Steinmetz said nothing as to whether behavioral health is regulated by the FCRA holding only that the specific plaintiff had "not allege[d] that any of these products [(such as ConsumerView and MetroNet)] are credit products regulated by the FCRA, let alone that they are either consumer reports or consumer disclosures subject to either §§ 1681e or 1681g." Steinmetz, 2019 WL 4415090, at *8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

to be information retained for use in a credit report and therefore is not part of the consumer file.

Separately, Experian also argues that the Behavioral Data would fall under an FCRA exemption in 15 U.S.C. § 1681g(a)(1)(B). Mot., 10. The Court is unconvinced by this argument. Specifically, the exemption applies to "information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1)(B). Section 1681g(f)(2)(A) then defines credit score to mean "a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default (and the numerical value or the categorization derived from such analysis may also be referred to as a "risk predictor" or "risk score"). This would suggest that the "risk scores or predictors" effectively refer to the credit scores themselves and not the underlying data used to create such scores or predictors.

However, there are allegations in the complaint that ConsumerView incorporated the Premier Aggregated Credit Statistics data which included "credit reporting agency data elements" such as available credit, collection activity, and credit capacity. Compl. at ¶ 42. Taking these allegations as true, they would constitute information that might or could be included in a consumer report given that the Non-Behavioral Data is information that would normally be included in a credit report pursuant to allegations in the complaint. See Compl., ¶ 27; see also 15 USC § 1681a (d)(1).

Throughout their complaint Plaintiffs appear to allege that Experian's ConsumerView reports in themselves (including Behavioral Data) constituted a consumer report. See e.g., Compl., ¶ 59. Plaintiffs have alleged that this information was independently used as a factor to determine eligibility for credit since a product brochure indicated one use of the product was "identify[ing] prospects for invitations to apply for credit ... offers." Id. at ¶ 44. The Court finds this theory unavailing because using information to identify a pool of potential credit applicants is not the same as using information to determine credit eligibility. The ConsumerView reports are not alleged to be "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for– (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes. . . ." 15 U.S.C.A. § 1681a(d)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                           Date   5/12/20

Title   Theresa Tailford et al v. Experian Information Solutions, Inc.

  At oral argument Plaintiffs argued that Trans Union Corp. v. F.T.C., 245 F.3d 809 (D.C. Cir. 2001), supported its conclusion that the ConsumerView reports could constitute consumer reports because the information was collected in whole or in part with the expectation that it would be used by credit grantors for the purpose of determining eligibility.  However, the circumstances in Trans Union are distinct from those alleged here.  First, Trans Union was an appeal from a Federal Trade Commission Order that considered whether the Commission's decision was unsupported by substantial evidence, but did not consider non-constitutional challenges to the interpretation fo the FCRA, and therefore sheds no light on this issue.  Id. at 814-15.  Additionally, Trans Union was creating marketing lists based on trade line information (information that is collected and transmitted in consumer reports).  This sheds no light as to the Behavioral Data.

  Experian next argues that Plaintiffs have not alleged that Experian has maintained or communicated data about them specifically.  Mot., 11.  The Court disagrees.  Plaintiffs have alleged that Alteryx obtained information from the ConsumerView product which includes "a series of aggregated credit attributes and Experian proprietary scores that represent the entire U.S. credit population."  Compl., ¶¶ 38-39.  Although aggregated credit attributes are not the same as data pertaining to individuals, Plaintiffs have also alleged that the data was granular enough including personally identifiable information which "could be cross-referenced with a voter registration database, for example, to procure essential details about individual consumers."  Id. at ¶¶ 57-58.  As to the individual Plaintiffs, the Complaint alleges that their disclosures "did not contain any indication that Alteryx had procured data either directly or indirectly from Experian."  See e.g., id. at ¶ 63.  Taking these allegations as true, as is required under Iqbal, Plaintiffs have adequately and logically pled that Experian did not satisfy the Section 1681g disclosure requirements by failing to include information in the disclosure that it derived from the FileOne database and provided to Alteryx through its ConsumerView product, as was allegedly done with "the entire U.S. credit population."  Id. at 39.

  Unlike Johnson v. Experian Info. Sols., Inc., where the plaintiff had pled entirely conclusory allegations on information and belief and did not "identify any specific information that was wrongfully withheld, nor [did] he provide any basis for his belief that defendants failed to provide him with all information in his file," Plaintiffs here have specified the information that was not provided and the basis for their belief which is derived from Experian's own consumer brochure information.  2019 WL 951425, at *2

Case 8:19-cv-02191-JVS-KES   Document 37   Filed 05/12/20   Page 12 of 15   Page ID #:553

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                              Date   5/12/20

Title      Theresa Tailford et al v. Experian Information Solutions, Inc.

(E.D. Cal. Feb. 27, 2019). Plaintiffs' allegations are also different from those in Diaz where the Plaintiff had concluded that "because Experian stores 'data on 'more than 300 million individuals,' on information and belief' Experian also stores information regarding [Plaintiff] in its databases." 2019 WL 6340155, at *4. Unlike in Diaz, Plaintiff has pled that Experian's database included information on the entire U.S. credit population which would logically include Plaintiffs, that the information was not provided on their Section 1681g disclosures, and specified what information was not included.

Experian also argues that Plaintiffs have not adequately alleged a willful violation because they have not made factual allegations concerning Experian's state of mind. Mot., 13-18. "The FCRA imposes civil liability on any consumer reporting agency which is either negligent or willful in failing to comply with any requirement imposed under the FCRA." Banga v. Experian Info. Sols., Inc., No. C 09-04867 SBA, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013). However, the FCRA does not require strict liability. Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) ("[A]n agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."). A willful violation is proven by a consumer if he shows that a CRA "either knowingly or recklessly violated the requirements of the Act." Banga, 2013 WL 5539690, at *6 (citing Safeco Insurance Company of America v. Burr, 551 U.S. 47, 57 (2007)).

Plaintiffs have alleged that "Experian does, or should, recognize the disclosure failures outlined" in their complaint. Compl., ¶¶ 81-82. However, such allegations are unsupported by facts pertaining to Experian's mens rea. The fact that Experian has "full control over the composition and presentation" of its consumer disclosures and other similar allegations included in the complaint does not support that it acted knowingly or recklessly. Id. Without more than bare conclusory allegations, Plaintiffs fail to "sufficiently plead willfulness, recklessness, and negligence." See Diaz, 2019 WL 6340155, at *5; Jenkins v. AmeriCredit Fin. Svcs., Inc., 2017 WL 1325369 at *7 (E.D.N.Y. Feb. 14, 2017); Braun v. Client Servs. Inc., 14 F. Supp. 3d 391, 398 (S.D.N.Y. 2014); Mnatsakanyan v. Goldsmith & Hull APC, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013).

Accordingly, the Court **DISMISSES** Plaintiffs' claims based on Behavioral Data for failure to sufficiently plead a willful violation and to the extent that they are based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

the theory that a CRA is required to disclose Behavioral Data on a Section 1681g disclosure.

### 2.   Inquiry-Based Claims

Experian argues that Plaintiff's inquiry based claims fail because the FCRA does not require a CRA to disclose "soft credit" inquiries in response to a consumer request for a file disclosure and because they have failed to allege that the inquiries at issue were consumer reports.  Mot, 18-20.  Plaintiffs respond that Experian was obligated to make all 1681g disclosures to Plaintiffs and offer as an example that "Tailford's consumer report in response to Loanme's promotional inquiry easily fell under Section 1681g(a)(5)."  Opp'n., 13.  Plaintiffs contend that Experian's argument runs contrary to Section 1681j.  Id.

"[T]he FCRA does not require Experian to disclose soft credit inquiry information."  Foskaris v. Experian Info. Sols., Inc., 2020 WL 1815743, at *2 (9th Cir. Apr. 9, 2020).  Section 1681g(a)(3) requires a CRA to disclose the identity of each person that procures a "consumer report" for employment purposes within a two year period that the request is made or any other purpose within a one year period that the request is made.  Plaintiffs allege that each of them individually received disclosures which did not show inquiries from a series of different parties although they are alleged to have been within the one or two year period preceding the consumer disclosure request.  See e.g., Compl. ¶¶ 63-68.  What Plaintiffs have not alleged is why these inquiries are required disclosures under Section 1681g(a)(1), (3), or (5).  Plaintiffs have alleged that Experian "concealed over 40 account-review consumer reports," as to Ruderman, but has not alleged any facts to support that account reviews are in fact consumer reports versus non-disclosure required soft credit inquiry information.  See e.g., Compl., ¶ 68. Similarly for Tailford and Buckles, Plaintiffs only allege that their admin reports showed a number of inquiries (for which certain examples are provided in a chart) that had occurred and that these inquiries were not included in their disclosures.  Id. at ¶¶ 63, 66.  These conclusory allegations are devoid of facts supporting that the inquiries constituted consumer reports and were therefore required to have been disclosed in a Section 1681g disclosure.  Nor have Plaintiffs alleged for example that the inquiries were not made in connection with a transaction that the Plaintiffs did not initiate with the third parties (1681g(a)(5)).

Additionally, the inquiry based claims are also devoid of any "willfull" allegations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-02191JVS(KESx) | Date | 5/12/20 |
|---|---|---|---|
| Title | Theresa Tailford et al v. Experian Information Solutions, Inc. | | |

as they appear to rely on the same conclusory paragraphs in the complaint as the Behavioral Data claims to allege a "willfull" violation. See Compl., ¶¶ 81-82; supra Section III(B)(2).

Accordingly, the inquiry based claims are **DISMISSED** both for failure to plead facts supporting the claim and for failure to sufficiently plead a willful violation.

### 3. Employment Date Claims

Experian also argues that Plaintiffs' claims that Experian violated the FCRA by failing to include "reported dates of employment" fail because they have no statutory footing. Mot., 20-21. Section 1681g(a)(1) requires that a CRA disclose information that has or might appear on a consumer report. See Shaw, 891 F.3d at 759. Plaintiffs have not alleged that the employment dates have ever appeared on or might appear on a consumer report. Comp., ¶¶ 61-62, 67, 70. Instead Plaintiffs allege that they are entitled to "all" Section 1681g Disclosures and that although the disclosures they received listed several current or former employers they did not disclose "any of the reported dates of employment". Id. at ¶¶ 61-62. As a result, Plaintiffs were allegedly unable to determine "whether the date ranges actually coincided with [their] actual dates of employment, with any prospective gaps threatening to suggest that Experian would imply [Tailford or Rutherford were] unemployed during times when" they were not. Id. at ¶ 62, 67. While Plaintiffs argue that "Employment-related date information appears on at least one type of Section 1681a(d)(1)(B) consumer report Experian offers," a conclusory allegation that the "Employment Insight" report is a "consumer report" does not make it so. See Compl., ¶ 28; see also Opp'n., 18. Furthermore, the Employment Insight product reports are not alleged to have been the report wherein the employment dates that the individual Plaintiffs allege were not included in their Section 1681g disclosures appear.

Additionally, the employment date based claims are also devoid of any allegations as to willfulness because they appear to rely on the same conclusory paragraphs in the complaint as the Behavioral Data claims to allege a "willfull" violation. See Compl., ¶¶ 81-82; supra Section III(B)(2).

Accordingly, the employment date based claims are **DISMISSED** both for failure to plead facts supporting the claim and for failure to sufficiently plead a willful violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-02191JVS(KESx)                               Date   5/12/20

Title   Theresa Tailford et al v. Experian Information Solutions, Inc.

### 4.     Leave to Amend

Leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  In determining whether leave to amend should be granted, four factors are considered: (1) undue delay, (2) bad faith or dilatory motive, (3) prejudice to the opposing party, and (4) futility of amendment.  Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007); Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, there has been no undue delay, bad faith or dilatory motive.  Additionally, the Court does not believe amendment of the action would be futile.  The Court acknowledges Experian's argument that "Plaintiffs have now advanced the same flawed theories five times."  Mot., 21.  However, Experian refers to a prior action brought by Plaintiffs that this Court dismissed both for lack of subject matter jurisdiction as to the asserted violations of Section 1681g and for failure to state a claim for a violation of Section 1681e(b).  Carson v. Experian Info. Sols., Inc., 2019 WL 3073993, at *7 (C.D. Cal. July 9, 2019).  This Court has not previously addressed whether Plaintiffs have pled plausible claims for relief on their Section 1681g claims.  Accordingly, the Court finds adequate reason to grant leave.  Plaintiffs are **GRANTED** thirty (30) days leave to amend their pleading to address deficiencies identified in this order.

### IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Remand, and **GRANTS** the Motion to Dismiss.  Plaintiffs are granted thirty (30) days leave to amend their pleading to address deficiencies identified in this order.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |