

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA TAILFORD, SANFORD BUCKLES, JEFFREY RUDERMAN, and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No.: CV 19-02191-CJC (KESx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** [Dkt. 54] |

## I. INTRODUCTION

Plaintiffs Theresa Tailford, Sanford Buckles, and Jeffrey Ruderman bring this putative class action against Experian Information Solutions, Inc. ("Experian") for alleged violations of the Fair Credit Reporting Act ("FCRA"). (Dkt. 40 [Redacted Copy of First Amended Complaint, hereinafter "FAC"]; *see* Dkt. 42 [Unredacted Copy Filed Under Seal].) Before the case was reassigned to this Court, Judge James V. Selna denied Plaintiffs' motion to remand this case to state court, and granted Experian's motion to

dismiss Plaintiffs' Complaint. (Dkt. 37 [hereinafter "JVS Order"].) Plaintiffs then filed a First Amended Complaint. Before the Court is Experian's motion to dismiss the First Amended Complaint. (Dkt. 54 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

## II. BACKGROUND

### A. The Types of Data Experian Collects

As is widely known, Experian collects consumer credit data, including information about credit accounts, creditors, debts, and credit inquiries. Experian stores this information in its "File One" database. (FAC ¶ 27.) When Experian receives credit inquiries, it responds to those inquiries with data derived "at least in part" from the File One database. (*Id.*) Experian's File One data for any particular consumer can be summarized in a document known as an "Admin Report." (*Id.*) Experian also collects information about consumers' employers and dates of employment. This information is used in another product called "Employment Insight." (*Id.* ¶ 28.)

Experian also collects what Plaintiffs describe as "non-traditional" consumer data such as household income and purchase history ("Behavioral Data"). (*Id.* ¶ 32.) Experian sells Behavioral Data to affiliates and third parties through a product called "OmniView," which includes a database called "ConsumerView." (*Id.* ¶ 33.) The ConsumerView database contains data on "thousands of attributes on more than 300 million consumers and 126 million households," including age, gender, marital status, presence of children, homeowner status, education, and occupation. (*Id.*)

//

### B. Data Breach

On October 6, 2017, an employee of UpGuard, a cyber-security research firm, discovered an Amazon cloud storage space that contained a spreadsheet titled "ConsumerView_10_2013.yxdb," which "appears to be an Experian ConsumerView product from October of 2013." (*Id.* ¶¶ 60–61.) The file contains 123 million rows, each signifying a different American household, and 248 columns, reflecting "the household addresses, phone numbers, number of adults and children living in the dwelling unit, length of residence, along with highly granulated consumer-purchasing data." (*Id.* ¶¶ 61–62 [listing all 248 columns].) This data, allegedly placed in cloud storage by data analytics company Alteryx, Inc., was stored in a way that allowed over one million users to access it. (*Id.* ¶ 60.)

UpGuard reported the data breach on December 19, 2017, and news organizations quickly picked it up. (*Id.* ¶ 62.) These news stories alerted Plaintiffs and the putative class that Alteryx allegedly procured their information from Experian, and that Experian was collecting, storing, and selling Behavioral Data. (*Id.* ¶ 63.) Each of the Plaintiffs then asked Experian, pursuant to the FCRA, to disclose to them the information that Experian had about them. Plaintiffs believe the disclosures Experian gave them in response to these requests were incomplete.

### C. Procedural History

This is not the first case these three Plaintiffs have been involved in relating to these allegedly deficient disclosures. Rather, all three Plaintiffs asserted that these disclosures violated Sections 1681e(b) and 1681g of the FCRA in *Carson v. Experian Information Solutions, Inc.*, No. 8:17-cv-2232-JVS-KES (C.D. Cal. Dec. 21, 2017) (the "Carson Case"). (*See* Carson Case Dkt. 57 [Third Amended Complaint].) During discovery in the Carson case, Plaintiffs obtained their Admin Reports and discovered that

the disclosures they received from Experian did not include (1) certain Behavioral Data, (2) the dates that their employers reported their employment history, and (3) certain soft inquiries. (*See, e.g.*, *id.* ¶¶ 29, 67, 73, 79.) The disclosures also did not show that Experian had given the Plaintiffs' data to Alteryx. (*Id.* ¶¶ 67, 73, 79.)

On July 9, 2019, Judge Selna dismissed the Carson Case because "Plaintiffs fail[ed] to show how Defendant's alleged violation of the FCRA amount[ed] to more than a 'bare procedural violation' . . . sufficient to confer Article III standing to bring their § 1681g claims." (Carson Case Dkt. 115.) Judge Selna gave the plaintiffs in the Carson Case 30 days to amend their complaint, but they failed to do so.

Instead, on November 12, 2019, Plaintiffs filed this case. On May 12, 2020, Judge Selna granted Experian's motion to dismiss Plaintiffs' Complaint, concluding that Plaintiffs failed to state a claim for violations of Section 1681g(a)(1), (3), and (5). (JVS Order.) Judge Selna granted Plaintiffs leave to amend, and Plaintiffs filed the First Amended Complaint. After Experian filed a motion to dismiss the First Amended Complaint, Judge Selna returned this case for reassignment, and it was reassigned to this Court. (Dkt. 57.) Now before the Court, then, is Experian's motion to dismiss Plaintiffs' First Amended Complaint. (Dkt. 54.)

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. DISCUSSION

Plaintiffs allege that by failing to disclose certain categories of information to the Plaintiffs and the putative class, Experian violated four provisions of the FCRA: Section 1681g(a)(1), Section 1681g(a)(3), Section 1681g(a)(5), and Section 1681b. The Court addresses each provision in turn.

### A.  1681g(a)(1): "Information in a Consumer's File"

Section 1681g(a)(1) requires consumer reporting agencies to, "upon request . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." A "consumer's file" is not every piece of information that a consumer reporting agency has about that person. Rather, the file includes only information on the consumer "that might be furnished, or has been furnished, in a consumer report on that consumer." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018). A consumer report is a communication by a consumer reporting agency "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit or insurance or employment purposes. 15 U.S.C. § 1681a(d)(1). Although the definition of a file—information that *might* be

furnished on a consumer report—is broad, it is not unlimited, and "does not open the door for every shred of information to be included in a consumer disclosure simply because there is some slight chance it might someday be in a consumer report." *See Steinmetz v. Am. Honda Fin.*, 2019 WL 4415090, at *7 (D. Nev. Sept. 16, 2019) *aff'd in relevant part, rev'd in part on other grounds,* 2020 WL 6557525 (9th Cir. Nov. 9, 2020) (explaining that the district court properly dismissed the plaintiff's § 1681g claim because he "did not allege that he requested a disclosure as is required under that statute").

Plaintiffs allege that Experian violated Section 1681g(a)(1) by failing to disclose three categories of information that constituted information in their consumer files: (1) Behavioral Data, (2) soft credit inquiries, and (3) the dates on which employers reported Plaintiffs' employment dates.

### 1. Behavioral Data (Count 1)

Plaintiffs allege that Experian collected their Behavioral Data, but failed to disclose that Behavioral Data when Plaintiffs asked Experian to disclose the data it had about them. Judge Selna concluded that Plaintiffs failed to sufficiently allege in their Complaint that Behavioral Data was information that might be furnished in a consumer report such that it would qualify as "information in the consumer's file" required to be disclosed under Section 1681g. (JVS Order at 12–13.) Experian argues that the FAC is similarly deficient. (Mot. at 7–16.) The Court agrees.

Like the Complaint, the FAC fails to plausibly allege that the Behavioral Data might be furnished on a consumer report. (*See* JVS Order at 9–10 ["Behavioral Data is not alleged to be information retained for use in a credit report and therefore is not part of the consumer file."].) Indeed, the FAC alleges that Experian gives Alteryx Behavioral Data from the ConsumerView database for use in "its data analytics service," not for any

use in determining a consumer's eligibility for credit, insurance, or employment. (FAC ¶ 42.) Nor does the FAC allege that any of Plaintiffs' data contained in ConsumerView was actually furnished on one of their consumer reports, or that Experian planned to include it in consumer reports in the future. (*See* JVS Order at 9 [explaining that Plaintiffs failed to "show that defendants included similar information in a consumer report in the past or plan to do so in the future"].)

Rather, Plaintiffs continue to rely on the theory Judge Selna rejected—that because ConsumerView data comes "at least in part" from Experian's File One database, which contains traditional credit information, some ConsumerView data "might be" used in a consumer report. (FAC ¶¶ 27, 49.) This Court is not any more persuaded by that theory than Judge Selna was. The ConsumerView database contains an absolutely enormous amount of data. (FAC ¶ 33 [describing the database as having "thousands of attributes on more than 300 million consumers and 126 million households"].) Plaintiffs allege that an unidentified portion of this data comes from the File One database, and that an unidentified portion of the File One database contains information traditionally included on a consumer report. This theory is too attenuated to make it plausible that ConsumerView data might be furnished in a consumer report. (*See* JVS Order at 8.) Experian's motion is therefore **GRANTED** as to Plaintiffs' Section 1681g(a)(1) claim relating to Behavioral Data.[1]

---

[1] In concluding that Plaintiffs fail to plausibly allege that Behavioral Data might be furnished on a consumer report, the Court joins a long list of courts that have held the same. *See, e.g.*, *Diaz v. Chase*, 2020 WL 1470900, at *4 (D. Nev. Mar. 26, 2020) (granting motion to dismiss with prejudice because the plaintiff failed to plausibly allege that behavioral data was reported in consumer reports, and "declin[ing] the invitation to expand the definition of a consumer report to include these compilations of behavioral data"); *Woodward v. Equifax Info. Servs., LLC*, 2020 WL 1450580, at *4 (D. Nev. Mar. 25, 2020) (granting motion to dismiss with prejudice because the plaintiff failed to plausibly allege "that Experian has provided, or will provide, her behavioral data in a consumer report sent to third parties for credit-related purposes," but rather only alleged that Experian gave behavioral data to third parties who then sold the data to other credit decision-makers); *Slyzko v. Equifax Info. Servs. LLC*, 2020 WL 1433518, at *5 (D. Nev. Mar. 23, 2020) (granting motion to dismiss where the plaintiff "d[id] not link the ConsumerView database that she alleges contains her behavioral data to any consumer report that Experian prepared on her—or even consumer reports generally"); *Mintun v. Equifax Info. Servs., LLC*,

### 2. Soft Credit Inquiries (Count 1)

Plaintiffs next allege that Experian had data on soft credit inquiries[2] it received about Plaintiffs, and violated Section 1681g(a)(1) by failing to include those inquiries on the disclosures Plaintiffs requested. (*See, e.g.*, FAC ¶¶ 54, 68, 73, 79.) However, as before, Plaintiffs have not plausibly alleged that FCRA required Experian to disclose these soft credit inquiries. (*See* JVS Order at 13.)

As explained, Plaintiffs cannot state a Section 1681g(a)(1) claim based on the soft inquiries unless they allege "that that the soft credit inquiry information that [they] wanted Experian to disclose to [them] 'might be furnished, or has been furnished, in a consumer report.'" *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439 (9th Cir. 2020) (quoting *Shaw*, 891 F.3d at 759). Plaintiffs again fail to make this allegation. Nor could they do so plausibly. "[S]oft inquiries, by their very nature, are not shared with third parties," and therefore are "not part of [a consumer's] file in the first place." *Steinmetz*, 2019 WL 4415090, at *8. Accordingly, "the FCRA does not require Experian to disclose soft credit inquiry information to" consumers under Section 1681g(a)(1). *Foskaris*, 808 F. App'x at 439 (affirming 12(b)(6) dismissal for this reason).[3] Experian's

---

2020 WL 1516806, at *3 (D. Nev. Mar. 30, 2020) ("[C]onstruing the facts in the light most favorable to Mintun and drawing all inferences in her favor, I cannot conclude that she has plausibly alleged that Experian has furnished behavioral data in a consumer report or plans to do so in the future.").

[2] "Hard inquiries" are "those resulting in actions initiated by the consumer, such as an application or inquiry for extension of credit." *Banga*, 2013 WL 5539690, at *1. These inquiries "are displayed on credit reports to third parties," and therefore "can potentially be taken into consideration in the lending process." *Id.* at *2. On the other hand, "soft inquiries" are "those not initiated by a consumer, such as account reviews and pre-screen inquires." *Id.* at *1. These "cannot be viewed by third parties who request a consumer's credit report," and therefore "cannot be taken into consideration in the lending process. *Id.* at *2.

[3] Numerous courts have dismissed substantially similar claims on this basis. *Mintun*, 2020 WL 1516806, at *4 (dismissing Section 1681g(a)(1) claim for failure to disclose soft inquiry information because "Experian simply does not share soft inquiries with third parties"); *Woodward*, 2020 WL 1450580, at *3 (dismissing similar claim because the plaintiff "d[id] not plausibly allege that soft

-8-

motion is therefore **GRANTED** as to Plaintiffs' Section 1681g(a)(1) claim relating to soft credit inquiries.

### 3. Date on Which Employment Dates Reported (Count 3)

Plaintiffs allege in Count Three that Experian violated 1681g(a)(1) by failing to include in the disclosures that Plaintiffs requested the dates on which their employers reported their employment dates. (FAC ¶ 162.) Again, Plaintiffs have not plausibly alleged that the date on which an employer reported the dates that any Plaintiff was employed is information "that might be furnished, or has been furnished, in a consumer report on that consumer." *Shaw*, 891 F.3d at 759. Indeed, the date employment information is reported to a consumer reporting agency has nothing to do with a consumer's eligibility for credit, insurance, or employment. *See Harrington v. Choicepoint Inc.*, 2006 WL 8198396, at *7–*8 (C.D. Cal. Oct. 11, 2006) (concluding that the date the information was reported does not bear on a consumer's credit worthiness, standing, or capacity, or a consumer's character, general reputation, personal characteristics, or mode of living). Experian's motion is therefore **GRANTED** as to Plaintiffs' Section 1681g(a)(1) claim relating to the dates on which employment dates were reported.

### B.   1681g(a)(3): Identity of Person that Procured Consumer Report

Section 1681g(a)(3) requires a credit reporting agency to disclose the identity "of each person . . . that procured a consumer report . . . for employment purposes." Plaintiffs allege that Experian violated this provision by failing to disclose the identity of all "end-users" of reports that Experian disclosed. (*See, e.g.*, FAC ¶¶ 75–76 [alleging that

---

inquiries were included in a consumer report or will be included in a consumer report in the future," since "soft inquiries are not shared with third parties").

although Experian disclosed the identity of American Mercury and the United States Department of Housing, it violated this section by failing to disclose the "end-user[s]" of those reports].)  But the statute requires Experian to disclose the identity of those who *procured* the consumer report—not the "end-users" of any such report.  15 U.S.C. § 1681g(a)(3).

Plaintiffs also allege that Experian violated this provision because the disclosures Experian provided did not show that Alteryx received Plaintiffs' data.  (FAC ¶¶ 67, 73, 79.)  But again, Plaintiffs allege only that Alteryx obtained Behavioral Data.  They do not plausibly allege that Alteryx itself was the one who "procured" the data, or that the data Alteryx obtained was a "consumer report" such that telling Plaintiffs about Alteryx would have been required.  *See Woodward*, 2020 WL 1450580, at *4 (D. Nev. Mar. 25, 2020) ("Woodward has not plausibly alleged that whatever Experian allegedly sends to third parties is a consumer report that is given to third parties for credit-related purposes."); (JVS Order at 13 [explaining that Plaintiffs failed to allege why soft inquiries were required disclosures under Section 1681g(a)(3)].)  Accordingly, Experian's motion is **GRANTED** as to Plaintiffs' claims resting on Section 1681g(a)(3).

### C. 1681g(a)(5): Inquiries in the One-Year Period Before Request (Count 2)

Section 1681g(a)(5) requires a credit reporting agency to disclose "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer."  In general, this subsection applies to "[p]romotional inquiries."  *See Miller v. Trans Union, LLC*, 644 F. App'x 444, 447 (6th Cir. 2016).  Plaintiffs allege that Experian violated this provision by failing to disclose all inquiries Experian received about them in the year prior to their disclosure requests.

Judge Selna dismissed this claim in the Complaint because he concluded that Plaintiffs' allegations were merely "conclusory," and were "devoid of facts" supporting a contention that the inquiries were made in connection with a credit or insurance transaction that Plaintiffs did not initiate. (JVS Order at 13.) Despite these clear instructions, Plaintiffs still do not allege that the purportedly omitted inquiries were made in connection with a credit or insurance transaction they did not initiate. Even in their opposition to this motion, Plaintiffs offer only hypotheticals. (*See* Opp. at 9 ["So, if the inquiries were made in connection with transactions [Plaintiffs] did not initiate, Experian violated 1681g(a)(5) by not including that inquiry in [their] CDI."].) This is not enough. Plaintiffs know whether they initiated a credit or insurance transaction with the relevant entities. Their failure to allege that they did not do so is fatal to their 1681g(a)(5) claims. Experian's motion is therefore **GRANTED** as to Plaintiffs' Section 1681g(a)(5) claims.[4]

### D.   1681b: Permissible Purpose

Plaintiffs' FAC contains three counts, alleging violation of 1681g(a)(1), (a)(3), and (a)(5) discussed above. But throughout the FAC, Plaintiffs allude to another claim—that Experian's conduct violated Section 1681b of the FCRA. That section states that a credit reporting agency like Experian may give a third party a consumer report when there is a "permissible purpose" to do so. 15 U.S.C. § 1681b. Agencies have a permissible purpose to give a consumer report to those they have reason to believe intend to use the information for purposes relating to, among others, credit, insurance, real estate, and employment involving the consumer. *See id.* Plaintiffs allege that Experian gave

---

[4] Since the Court concludes that Plaintiffs fail to plausibly allege that Experian violated Section 1681g(a), it need not address the parties' arguments regarding whether any of the alleged violations were willful. However, even if the Court had concluded that Experian violated some section of the FCRA, it would have concluded that Plaintiffs fail to plausibly allege that Experian willfully violated any provision of the FCRA, for the reasons stated in Experian's motion and Judge Selna's Order.

Plaintiffs' credit information to third parties for non-permissible purposes. (*See* FAC ¶¶ 71, 77, 82.)

"To properly allege a violation of 1681b, Plaintiffs must plead facts to support the conclusion that [Experian] could not have had any of the enumerated permissible purposes." *Kramer v. MicroBilt Corp.*, 2019 WL 8065849, at *4 (C.D. Cal. Sept. 12, 2019). As many courts in the Ninth Circuit have explained, bare allegations that the defendant did not have a permissible purpose for furnishing a credit report are not sufficient to state a claim under Section 1681b. *Jones v. Best Serv. Co.*, 2017 WL 490902, at *7 (C.D. Cal. Feb. 6, 2017), *aff'd,* 700 F. App'x 580 (9th Cir. 2017) (collecting cases).

Plaintiffs do not allege any facts supporting their claim that Experian violated Section 1681b. They do not allege, for example, that they had no relationship with the entities to which Experian allegedly disclosed information for an improper purpose, or that they did not initiate any business transaction or apply for credit with those entities, or that they have not worked for or applied for employment with those entities. *See Kramer*, 2019 WL 8065849, at *4. Nor do they allege that Experian lacked any reason to believe that the credit information disclosed would be used for a proper purpose. *See Abbink v. Experian Info. Sols., Inc.*, 2019 WL 6838705, at *3 (C.D. Cal. Sept. 20, 2019), *reconsideration denied,* 2020 WL 401107 (C.D. Cal. Jan. 23, 2020) ("[T]o show that a report was 'furnished' for a permissible purpose . . . a CRA need only show that it had 'reason to believe' that the report would be used for that purpose."). Without such factual allegations, Plaintiffs' claim is based on nothing more than speculation. *See Slyzko*, 2020 WL 1433518, at *6 (granting motion to dismiss permissible-purposes claim as "wholly speculative" where the plaintiff failed to allege that her information was actually used for impermissible purposes). Experian's motion is therefore **GRANTED** as to Plaintiffs' allegations that Experian violated Section 1681g(a)(5).

### E. Leave to Amend

"Although leave to amend 'shall be freely given when justice so requires,' it may be denied" where it "would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)). That is the case here. Plaintiffs brought these claims in the Carson Case. *See* Carson Case Dkt. 115 ("Plaintiffs allege non-disclosure of three types of information in violation of 15 U.S.C. §§ 1681g(a)(1), (a)(3), and (a)(5): 'soft' credit inquiries or 'pulls,' consumer behavioral data, and employment data."). The claims failed. Plaintiffs brought these claims in the Complaint. Judge Selna dismissed them for nearly exactly the reasons the Court dismisses them here. (*See* JVS Order.) Plaintiffs have failed to cure the deficiencies in their claims despite multiple opportunities to do so, and nothing in the record suggests that they could allege any new facts that would suffice to plausibly state a claim for violation of the FCRA. Granting further leave to amend would therefore be futile.

## V. CONCLUSION

For the foregoing reasons, Experian's motion to dismiss is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

DATED: November 18, 2020

_____
HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE